UNITED STATES

v.

**Technical Sergeant Bruce D. TURNER, FR262–35–6215, United States Air Force.**

ACM S28163 (reh).

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 July 1991.
Decided 22 May 1992.

Appellate Counsel for the Appellant: Major Alice M. Kottmyer (argued) and Colonel Jeffrey R. Owens.

Appellate Counsel for the United States: Major Kingston E. Smith (argued), Lieutenant Colonel Brenda J. Hollis, and Captain James C. Sinwell.

Before LEONARD, RIVES, and McLAUTHLIN, Appellate Military Judges.

## OPINION OF THE COURT UPON REHEARING

LEONARD, Senior Judge:

If an accused received a sentence at his original trial that included a punitive discharge, but no confinement, should the military judge's rehearing sentencing instructions inform the members that they may adjudge confinement as a lesser punishment instead of the punitive discharge? We hold the military judge should have so instructed and take corrective action on appellant's sentence.

In June 1989, a special court-martial found appellant guilty of larceny of military property of the United States and sentenced him to a bad-conduct discharge,

forfeiture of $466 pay per month for 6 months, and reduction to E–1. Our original review of appellant's case set aside his sentence because of prejudicial error in the trial counsel's sentencing argument.[1] We remanded for a rehearing on sentence and that hearing took place on 1 July 1991. At the rehearing, court members sentenced appellant to a bad-conduct discharge and reduction to E–3. The convening authority approved this sentence on 29 July 1991.

■ Appellant's sole issue upon further review concerns the adequacy of the military judge's instructions on the rehearing maximum punishment.[2]

Early in the rehearing, the parties discussed the maximum sentence the court members could impose. After giving the defense counsel a chance to state a position, the military judge expressed the opinion that R.C.M. 810 required him to instruct the members that their maximum punishment was the original sentence. He also stated that instructing on equivalent, lesser sentences applied only to cases involving a sentence of a "naked punitive discharge" at the original trial. Trial counsel agreed with the military judge's assessment.

Appellant's defense counsel said his original position was to ask for confinement as a punishment option; however, after "reviewing the only case law *we* could find," he could not offer any support for that position (emphasis added). Therefore, he "deferred" to the military judge's opinion.

In a subsequent session, the military judge stated his intention to instruct the court members that they could impose: "ancillary punishments, of lesser severity; such as a restriction, hard labor without confinement, and a reprimand." Neither party objected to this addition to the sentencing instructions. The military judge had the trial counsel prepare a tailored sentence worksheet that listed the punishment options available to the members.

This worksheet listed a bad-conduct discharge, a reprimand, reduction in grade, forfeiture of pay, hard labor without confinement, restriction, and no punishment as available options. When the time came for sentencing instructions, the military judge announced the following maximum punishment:

> The maximum punishment that this special court-martial may adjudge against Sergeant Turner is a bad conduct discharge, forfeiture of $466.00 pay per month for a period not to exceed six months, and reduction to the lowest enlisted pay grade, E–1.

The military judge informed the members that this maximum punishment served as a ceiling on their discretion and they could impose various types of punishment within that ceiling. He informed the members that their punishment options included a reprimand, reduction to the lowest or any intermediate enlisted grade, restriction to limits for a maximum period not to exceed 2 months, hard labor without confinement for a period not to exceed 3 months, forfeitures of pay for any amount up to the maximum of $466 per month, a bad-conduct discharge, and no punishment. The military judge provided the tailored sentence worksheet to the members at the end of his instructions. Neither the defense nor the government raised any objection to the instructions provided to the court members.

In his sentencing argument, trial counsel asked for a bad-conduct discharge, hard labor without confinement for 3 months, substantial forfeitures, and reduction to E–1. Appellant's defense counsel argued against a bad-conduct discharge emphasizing the "unwashable stain," "dishonor and disgrace," and long term severity of such punishment in view of appellant's 16 years of "stellar" performance. In conclusion, he asked for a sentence that would allow appellant "to pick up the pieces of his shat-

---

1. *United States v. Turner,* 30 M.J. 1183 (A.F.C.M.R.1990).

2. WHETHER, ON THE REHEARING ON SENTENCE, THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE AP-

PELLANT BY FAILING TO INSTRUCT THE COURT MEMBERS THAT CONFINEMENT WAS AN OPTION IN LIEU OF A PUNITIVE DISCHARGE?

tered life and return as quickly as possible to the productive individual he once was."

Appellant contends the military judge had a duty to instruct the court members correctly on the maximum punishment they could adjudge and all the punishment options available to them. He argues these instructions should have included confinement as a punishment option among the range of lesser punishments the court members could consider instead of a bad-conduct discharge. The government disagrees and asserts that the military judge's instructions were proper or, in the alternative, appellant's failure to object to the instructions at trial waived any error. Appellee also argues that it is clear from the record that appellant made a tactical decision to avoid confinement as a punishment option.

Both Article 63, UCMJ, and R.C.M. 810(d) limit the sentence imposed in a rehearing to a sentence that is not: "in excess of or *more severe* than" the sentence imposed at the original trial (emphasis added). The discussion following R.C.M. 810(d) explain.

> In adjudging a sentence not in excess of or more severe than one imposed previously, a court-martial is not limited to adjudging the same or a lesser amount of the same type of punishment formerly adjudged.

R.C.M. 1005(e) lists required sentencing instructions for courts-martial including: "A statement of the maximum authorized punishment which may be adjudged and of the mandatory minimum punishment if any." The discussion following this paragraph provides:

> The maximum punishment is the lowest of: ...; or in a rehearing or new or other trial the punishment adjudged by a prior court-martial or approved on review, supplemented by the total permitted by any charges not tried previously (*see* R.C.M. 810(d)).... A carefully drafted sentence worksheet ordinarily should be used and should include reference to all authorized punishments in the case.

In *United States v. Kelley*, 5 U.S.C.M.A. 259, 17 C.M.R. 259 (1954), both the court members and trial counsel assumed that, when the original trial adjudged only a bad-conduct discharge, the sentences permissible upon rehearing were limited to a bad-conduct discharge or no sentence. In holding this assumption incorrect, the Court stated the Article 63, UCMJ, 10 U.S.C. § 863, words "in excess of or more severe than the original sentence" meant that the original sentence was a permissible maximum, and the *Kelley* rehearing court-martial could have imposed any sentence less severe than a bad-conduct discharge. The Court held that all the other punishment options available to a special court-martial, including confinement for not more than 6 months, were less severe than a bad-conduct discharge. Finding the erroneous assumption concerning maximum punishment prejudicial to *Kelley*, the Court reversed his second sentence to a bad-conduct discharge.

In *United States v. Smith*, 12 U.S.C.M.A. 595, 596, 31 C.M.R. 181, 182 (1961), the Court found proper a law officer's instructions in a rehearing that lesser punishments in lieu of a bad-conduct discharge included confinement, hard labor without confinement, restriction, forfeitures, and a reprimand—as long as the court members determined, as reasonable persons, that any punishment substituted in lieu of a bad-conduct discharge was, in fact, of a lesser degree of severity than a bad-conduct discharge. The Court noted that this was Smith's second rehearing and the absence of such an instruction had been the reason for reversing the sentence at his first rehearing.

The government argues that we should not follow *Smith* and *Kelley* because appellant's counsel pursued a deliberate strategy to avoid confinement as a punishment option and appellant should be bound by his tactical decision at trial. We disagree with the government's argument for two reasons. First, our review of the record of trial does not support the government's theory of an "obvious strategy." Although appellant's defense counsel stated "rather than risk any chance of confinement" he

was deferring to the military judge's view of maximum punishment, the clear thrust of the defense rehearing strategy was to try to avoid a punitive discharge and give appellant a chance to return to being the productive individual he had been. Both the closing argument on sentence and appellant's unsworn statement to the court members emphasized this same theme.

Second, even if the defense strategy was to avoid confinement, the military judge was still required to instruct the court members properly. We addressed a similar issue in *United States v. Jones*, 31 M.J. 908 (A.F.C.M.R.1990), *pet. denied*, 32 M.J. 371 (C.M.A.1991). In that case, the defense asked the military judge to instruct rehearing court members that they could not impose confinement in lieu of the bad-conduct discharge originally adjudged. The defense made it clear that Jones viewed confinement as more severe than a bad-conduct discharge. The military judge refused to give the instruction requested by the defense and stated he would instruct in line with *Smith*. We found the military judge's decision proper and quoted a portion of the *Kelley* decision pointing out:

> [T]he issue before us is not the distinction between mitigation and commutation, and its consideration of whether one punishment is different in kind from that of another, but whether there are legal punishments less severe than a bad conduct discharge which can be adjudged by a court-martial on a rehearing.

*Jones*, 31 M.J. at 910, citing *Kelley*, 17 C.M.R. at 262.

■ We also find that waiver does not apply in this case. Like *Kelley*, appellant's record clearly shows that all the parties misunderstood and misapplied the law concerning sentencing options in a rehearing. Appellant's counsel relied upon three cases that were not on point and then deferred to the military judge's incorrect understanding of the law.

The military judge erred in failing to instruct the rehearing court members on all the less severe punishments options available to them. The Manual for Courts–Martial requires a military judge to in-

struct court members on the maximum sentence that they may impose. R.C.M. 1005(e)(1). In a rehearing, a military judge has the additional responsibility to instruct the court members properly on the less severe sentences available in place of the original sentence. *Smith*, 31 C.M.R. at 183; *Kelley*, 17 C.M.R. at 262; *Jones*, 31 M.J. at 910.

■ Appellant is a technical sergeant with more than 16 years of excellent service and no disciplinary record before his court-martial. Even with the full range of punishment options available to the members, the determination of an appropriate sentence could be difficult. When the military judge's improper instructions denied the court members the ability to consider the full range of sentences lawfully available as punishment, the choices became even more difficult. If the members wished to choose a punishment that did not include a bad-conduct discharge, the only choices the military judge's instructions left them were a reprimand, restriction, hard labor without confinement, reduction, and forfeitures—all very light punishments in comparison to a bad-conduct discharge. Therefore, under the circumstances of this case, we find the instructional error materially prejudiced appellant's substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

■ During oral argument, both parties asked, if we found prejudicial error, that we not send this case back for another rehearing on sentence. We will comply with that request. Appellant's original court-martial took place in June 1989, almost 3 years ago. Another rehearing of this case would not serve justice. We can modify and reassess appellant's sentence to cure the error in his trial. R.C.M. 1203(b) Discussion; *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). Considering only the evidence properly before the court members at trial and the law concerning less severe sentences in a rehearing, we modify appellant's sentence by changing the bad-conduct discharge to confinement for 6 months and approve a sentence of confinement for 6 months and reduction to

E–4.[3] We further find this modified and reassessed sentence to be appropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The approved findings of guilty and the sentence, as modified, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Judges RIVES and McLAUTHLIN concur.

---

3. At trial, appellant's defense counsel expressed the view that a footnote in *United States v. Thompson,* 12 M.J. 993, 997 n. 8 (A.F.C.M.R. 1982) seemed to indicate that, if confinement were adjudged at a rehearing, appellant would not have to serve it. Counsel's comment was incorrect. Footnote 8 of *Thompson* expressed the opinion that, if the Court of Review had commuted Thompson's sentence to a period of confinement, the confinement would begin from the date the original sentence was adjudged by the court-martial. We do not believe this footnote applies to our modification of this appellant's sentence. R.C.M. 1113(d)(2) provides: "confinement *included in the sentence of a court-martial* begins to run from the date the sentence is adjudged by the court-martial." No confinement was included in appellant's court-martial sentence. His sentence to confinement does not exist until this decision is promulgated *changing* his sentence. That change of sentence will not be "adjudged" until appellant is officially notified of our decision. At that point, appellant's sentence to confinement will begin to run.