**UNITED STATES**

v.

**Airman Robin B. MARSH, FR559–55–2034 United States Air Force.**

**ACM 29073.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Sept. 1990.

Decided July 10, 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Beverly B. Knott.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, and Captain James C. Sinwell.

Before O'HAIR, RIVES, and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

MILLS, Judge:

Airman Marsh was found guilty, contrary to his pleas, by a general court-martial with members of one specification of wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the adjudged sentence of a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to E-1.

On appeal, Marsh argues he was prejudiced by the admission into evidence of a deposition, improper sentencing argument by the trial counsel, and a record of trial that is not verbatim. We find no prejudice from these assigned errors. However, we have taken corrective action regarding the sentence because of an unasserted error.

The following facts are relevant to the disposition of the first assigned error. The appellant tested positive for cocaine during a base-wide random urinalysis conducted on 2 April 1990. An Article 32 investigation on the charge was conducted on 7 August 1990, and the appellant was represented by Captain Roth, his detailed defense counsel. Captain Roth was the Area Defense Counsel at March Air Force Base (AFB), California. Staff Sergeant (SSgt) Duncan, who was the appellant's observer at the random urinalysis, testified under oath at the Article 32. At that time he was subject to cross examination by Captain Roth. The testimony of Duncan was summarized by the investigating officer since there was no court reporter or tape recording at the investigation. The convening authority referred the charge to a general court-martial on 21 August 1990.

Duncan was a flight engineer on a KC-10 aircraft assigned to the 9th Air Refueling Squadron at March. As flight engineer he was a member of the cockpit crew who operated the aircraft systems. During early August 1990, his squadron was deployed in support of Operation Desert Shield in the Persian Gulf. Duncan was not deployed at that time because he was an essential witness in the appellant's pending trial.

On 23 August 1990, Duncan's squadron requested that he be released to perform his operational requirements because other squadron members had reached their maximum number of flight hours. Duncan was needed to replace other members so that the squadron could perform its mission. He had already been excused from two taskings for Desert Shield, one on 20 August and one on 23 August because he was to be a witness. When the request was made for Duncan's release it was not known for certain when he would be required to depart. His departure could have taken place the day after his release or within the next week or two. Duncan actually departed on 4 September 1990. At an Article 39(a), 10 U.S.C. § 839(a) session on 11 September 1990, the squadron operations officer testified that Duncan could possibly return by the end of the month or, depending on mission taskings, he could be gone for another 2 months.

Also on 23 August, the Chief Circuit Defense Counsel (CCDC) for the Fifth Circuit detailed Captain Clark, a circuit defense counsel stationed at Travis Air Force Base, California, to represent the appellant along with Captain Roth. This took place during a telephone conversation between Captain Roth and the CCDC. Captain Clark was also notified of this decision on 23 August. Shortly after notification of the detailing of Captain Clark, Captain Roth spoke with the staff judge advocate at March AFB and advised him that Captain Clark had been detailed to the appel-

lant's case. For reasons unknown, the staff judge advocate suggested that the appellant thereafter submit a request for Captain Clark as an individual military counsel (IMC).

On the morning of 24 August, the appellant signed an IMC request for Captain Clark. This request was hand carried to the base legal office prior to 1100. Captain Roth was orally informed at 1300, 24 August, that a deposition was to be taken of SSgt Duncan the next day, Saturday, 25 August. Also during the afternoon of 24 August, Captain Roth received a copy of the government's request to the convening authority to take the deposition of SSgt Duncan. On 24 August, Captain Roth presented a written response to the convening authority, presenting several detailed objections to the deposition. One of his listed reasons was that it "is clearly unnecessary to preserve SSgt Duncan's testimony, since he testified extensively at the Article 32 hearing in this case and his testimony is already preserved in the form of his summarized testimony." [1] The following documents were also dated 24 August 1990: (1) a letter from the convening authority to Captain Roth overruling his objections to the deposition; (2) a letter by the convening authority appointing a deposition officer; and (3) a letter from the deposition officer addressed to the appellant, with a copy to Captain Roth, notifying them the deposition would be held at 0800, Saturday, 25 August 1990.[2]

At the deposition on 25 August, the deposition officer advised the appellant of his right to counsel, including the right to Captain Roth as his detailed counsel, his right to counsel of his own selection if reasonably available, and his right to civilian counsel at his own expense. The appellant acknowledged his understanding and advised the deposition officer that he wanted a delay in the deposition until Captain Clark, his IMC, could be present. The dep-

---

1. Captain Roth acknowledged before the military judge that he erred in making this one of his reasons for objecting to the deposition since Mil.R.Evid. 804(b)(1) would not allow a summarized transcript of testimony to be admitted.

2. Captain Roth and the appellant did not receive the written notice of the deposition until they walked into the deposition room on Saturday morning.

osition officer acknowledged that the appellant had filed his request for Captain Clark as IMC on 24 August. The deposition officer also acknowledged that the CCDC had advised her that the request would be approved. The defense moved for a delay in the deposition on the basis of inadequate written notice of the deposition under R.C.M. 702 and because the appellant's IMC was unable to be present on 25 August. The deposition officer noted the objections and proceeded with the deposition.[3] Captain Clark, the IMC, advised the military judge that he could have been available for the deposition on 27 August.

Before entry of pleas, the defense made a motion for appropriate relief to exclude the deposition of SSgt Duncan. The objections were basically the same as had been made before and at the deposition. The defense argued that the government failed to give proper written notice as required by R.C.M. 702(e), and thus counsel was not given adequate time to prepare for the cross-examination of the deponent. They also argued that taking the deposition on 25 August violated the right of the accused to have his individual military counsel present. Finally, the defense argued that the government must show that the witness is unavailable under Mil.R.Evid. 804(a) before allowing the use of the deposition, and that admitting the deposition would violate the appellant's right to confrontation under the 6th Amendment to the Constitution. These same issues are now raised by the appellant.

The military judge denied the motion to exclude the deposition testimony of SSgt Duncan after making the following conclusions based on his essential findings:

First, in view of the circumstances set forth in the essential findings and in view of the detailed counsel in this case, his prior preparation, specifically, referring to the Article 32 investigation, the written notice of the deposition of Staff Sergeant Duncan was reasonable.

In making that conclusion, I would note that in the defense objection to the deposition, the defense opined that the Article 32 testimony of Staff Sergeant Duncan was sufficient.

Second, the court concludes that at the time the convening authority directed the deposition to proceed, the accused was not denied his right to counsel since the detailed counsel was present and available, and extensively prepared.

Third, the court finds that Staff Sergeant Duncan is unavailable within the meaning of Article 49 of the Uniform Code of Military Justice and Military Rule of Evidence 804(a)(6).

I

■ The appellant first objects to the admissibility of SSgt Duncan's deposition because of the failure to give proper written notice under R.C.M. 702. R.C.M. 702(e) requires the person requesting the deposition to "give to every other party reasonable written notice of the time and place for taking the deposition...." The record reflects that Captain Roth and the appellant did not actually receive the written notice of the deposition until just before the deposition taking place on the morning of 25 August 1990. We conclude this does not constitute the "reasonable written notice" contemplated by R.C.M. 702(e).

■ However, it is clear that despite the inadequate written notice, Captain Roth was fully aware of the pending deposition on 24 August 1990. His written objections to the convening authority show that he had ample notice. It is also clear that Captain Roth and the appellant were present at the deposition, and Captain Roth actively participated throughout the deposition including a thorough cross-examination of the deponent. In addition, Captain Roth was aware of the nature of SSgt Duncan's testimony based on his active participation in the Article 32 investigation on 7 August. Therefore, even though the written notice requirements of R.C.M.

---

**3.** Between 25 August and 4 September 1990, neither the government nor the defense request-

ed a further deposition of SSgt Duncan.

702(e) were not completely satisfied, we find no prejudice resulted to the appellant. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *see United States v. Sines,* 761 F.2d 1434 (9th Cir.1985). *See also United States v. Stewart,* 3 C.M.R. 690 (A.F.B.R.1952) (notice received by defense counsel approximately 1 hour before deposition). *See generally United States v. Moore,* 32 M.J. 56 (C.M.A. 1991) (defense counsel received verbal notice the day before deposition and received statements of deponents 2 hours before deposition). *But see United States v. Donati,* 14 U.S.C.M.A. 235, 34 C.M.R. 15 (C.M.A.1963) (75 minutes elapsing between time defense was made aware of identity of intended deponent and time proceeding was opened was not reasonable notice); *United States v. Giles,* 42 C.M.R. 880 (A.C.M.R. 1970) (a telephone call to accused approximately an hour and a half before the deposition and at a time when accused was drinking and in no condition to participate in the proceeding did not constitute reasonable written notice).

█ The next argument by the defense causes us greater concern. The appellant objected to the deposition because his IMC was not able to be present on 25 August. The government was aware that Captain Clark had been detailed or made available as the appellant's IMC before the deposition was ordered. The deposition officer herself acknowledged that she had been informed by the CCDC that the request for Captain Clark as IMC would be approved. R.C.M. 702(g)(1)(A)(ii) provides that the accused has the right to be represented by counsel at an oral deposition as provided in R.C.M. 506. R.C.M. 506(a) provides that:

> The accused has the right to be represented before a general or special court-martial by civilian counsel if provided at no expense to the Government, and either by the military counsel detailed under Article 27 or military counsel of the accused's own selection, if reasonably available. The accused is not entitled to be represented by more than one military counsel.

*See* Article 38, UCMJ, 10 U.S.C. § 838. The right to services of counsel extends both to the pretrial and the trial proceedings. *See United States v. Donati, supra,* at 20; *United States v. Tellier,* 13 U.S.C.M.A. 333, 32 C.M.R. 333 (1962).

However, the right to counsel of *choice* is not as absolute as is the right to the assistance of counsel and must be balanced against society's interest in the efficient and expeditious administration of justice. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *United States v. Stevens,* 27 M.J. 626 (A.F.C.M.R.1988); *United States v. Gipson,* 25 M.J. 781 (A.C.M.R.1988). We find it was error to take the deposition of SSgt Duncan without providing the appellant a reasonable opportunity to have his IMC present and will address this error for prejudice to the appellant.

█ Finally, we concur with the conclusion of the military judge that SSgt Duncan was unavailable within the meaning of Article 49(d)(2), UCMJ, 10 U.S.C. § 849(d)(2), and Mil.R.Evid. 804(a)(6). We find that Duncan was unavailable due to military necessity in that he was performing an essential military mission as an aircraft flight engineer in support of Operation Desert Shield.

█ Having found error, we must determine whether any material prejudice to a substantial right of the appellant resulted. Article 59(a), UCMJ. We conclude that it did not. First, the appellant was present at the deposition and represented by fully qualified detailed counsel. Even though detailed counsel argued he was not given sufficient written notice of the deposition, he conducted a thorough cross-examination of Duncan. We note, as did the military judge, that the detailed counsel had previously examined Duncan at the Article 32 investigation and was fully aware of the nature of his testimony. We conclude that the appellant was represented by an effective counsel at the deposition of SSgt Duncan. As Chief Justice Rehnquist succinctly stated, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each

criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). There is no evidence that the defense attempted to further depose Duncan after the 25 August deposition. Of even greater significance, we also note the appellant testified under oath before findings and denied he ever used cocaine. During cross-examination, the appellant acknowledged that he heard the testimony of SSgt Duncan at the deposition and the deposition testimony read at trial. The appellant agreed that everything SSgt Duncan testified to in the deposition was true and he did not contradict or dispute any of Duncan's testimony. While we condemn this error, based on the particular facts here, we conclude the error was harmless.

## II

■ In his next assignment of error, appellant argues he was substantially prejudiced by trial counsel's improper sentencing argument that the appellant should not be considered for rehabilitation because he failed to admit his guilt and that such argument constitutes a penalty on the exercise of his right to plead not guilty. *United States v. Jones*, 30 M.J. 898 (A.F.C.M.R. 1990); *United States v. Turner*, 30 M.J. 1183 (A.F.C.M.R.1990).

As part of his sentencing argument for a bad-conduct discharge, trial counsel argued:

Taking the crime first. The seriousness of the crime rises to the level of a bad-conduct discharge. Now, at this time when we focus on Airman Marsh, let's focus at his potential for rehabilitation. The first step in rehabilitation is taking responsibility for your own actions. The accused has proven to you that he cannot take responsibility for his actions. He came in here today. He took another oath and he told you that he did not use cocaine. But as we know, lying under

oath is really nothing new for the accused. Now, I'm not saying punish him more severally [sic] because he has lied to you. I'm just saying that goes to his rehabilitation potential.

Appellate government counsel assert that trial counsel's sentencing argument was proper as a "mendacious accused" argument. *United States v. Warren*, 13 M.J. 278 (C.M.A.1982). In sentencing, *Warren* allows a military judge or court members to consider the accused's lack of truthfulness in his own defense as a factor relating to his prospects for rehabilitation and trial counsel may argue for its consideration by the judge or members. *Warren, supra*, at 284, 285. *See also United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Standifer*, 31 M.J. 742 (A.F.C.M.R.1990).

There was no objection to trial counsel's sentencing argument. Before the court closed for sentence deliberations, the military judge instructed the members with a proper mendacity instruction. Trial defense counsel did not object to this instruction, nor did he request additional instructions when specifically queried by the military judge.

We find a crucial distinction in the instant case from the *Jones* and *Turner* cases cited by the appellant. In both *Jones* and *Turner*, the prosecution zeroed in on the need to deny the accused rehabilitation because he had failed to admit his guilt. *Jones*, 30 M.J. at 901; *Turner*, 30 M.J. at 1187. Viewing the argument in this case in its entirety, we conclude the trial counsel's argument was an acceptable "mendacious accused" argument. The trial counsel argued that Marsh's lack of truthfulness was an indication of appellant's rehabilitative potential. The argument was directed towards the appellant's testimony on findings and not his failure to come forward and admit guilt during sentencing. *Grayson*, 438 U.S. 41, 98 S.Ct. 2610; *Warren*, 13 M.J. 278; *Standifer*, 31 M.J. 742.[4]

---

**4.** Once again we note that using words such as "he cannot take responsibility for his actions" comes dangerously close to improper argument.

As Senior Judge Leonard has previously warned, "We strongly caution trial counsel to choose their words carefully when making a

## III

■ Finally, the appellant asserts he is being denied appellate due process because the record of trial is incomplete. Appellant argues that the record is not verbatim because of the following discussion between defense counsel, trial counsel, and the military judge during an Article 39(a) session while the court members deliberated on findings:

IMC: Yes sir. The defense has no documentary evidence. But we renew our request for a ruling under Chapter 4.[5]

MJ: Oh, yes. Where is the government at with regard to Chapter 4?

TC: Your honor, it is my understanding that the request has been forwarded for a decision. However, the decision authority was off station and unavailable until, I believe, today. At this time, I have not made a determination of whether it has been finally acted upon. However, I have reviewed Air Force Regulation 39–10 which indicates that if formal charges have been referred to trial, and once the trial date has been set, that the GCM authority decides whether trial should proceed or be delayed until final action is taken. The GCM may delegate this authority to the Special Court–Martial convening authority. That delegation has been made. And, the Special Court–Martial convening authority did indicate that trial should continue. I also note, that under the regulation that once trial has begun, the military judge can decide whether trial should proceed. I can at the next break make an inquiry and determine where the Chapter 4 is, but

I just wanted to state for the record that the prior processing was completed, but the Special Court–Martial convening authority did direct that trial should proceed while the Chapter 4 is pending.[6]

MJ: I'm prepared to rule on it at this time. The court directs that this trial does proceed and continue to it's [sic] final result whether it's guilt or innocence. Further matters from either side?

DC: No, Your Honor.

TC: No, Your Honor.

It appears from the above that at sometime during or before the trial, the fact that the appellant had submitted a Chapter 4 request for discharge had been raised. However, it is also clear from the record that before entry of pleas, the only motion raised by the trial defense counsel was admissibility of the deposition of SSgt Duncan. After the military judge made his ruling on the deposition, the defense stated they had no further motions and entered a plea of not guilty.

We also note the defense has not submitted any evidence from appellant or trial defense counsel that any substantial discussion or argument about the Chapter 4 took place off the record. In fact, the appellate counsel note that it is possible that any previous discussion about the Chapter 4 amounted to nothing more than a request for the military judge to rule on whether the trial should proceed before a final determination was made by the convening authority. As was noted in *United*

---

'mendacious accused' argument to insure that they do not slip over the line into a forbidden comment on an accused's failure to admit guilt." *Standifer, supra* at 744.

5. The processing of requests for discharge in lieu of trial by court-martial is governed by Air Force Regulation 39–10, *Administrative Separation of Airmen,* chapter 4 (April 1988).

6. Included among the allied papers to the record of trial is a 4 September 1990 request by the appellant for discharge in lieu of trial by court-martial under the provisions of AFR 39–10, chapter 4. The allied papers also include the following documents concerning the appellant's request: a 10 September 1990 recom-

mended denial from the appellant's unit commander; a 10 September 1990 legal review by the base staff judge advocate; a 10 September 1990 letter from the base staff judge advocate with an indorsement from the special court-martial convening authority directing the scheduled trial to continue; a 10 September 1990 recommended denial from the special court-martial convening authority; a 12 September 1990 legal review by the general court-martial convening authority's staff judge advocate; and a 13 September 1990 letter from the general court-martial convening authority denying the request.

*States v. Settle,* 33 M.J. 688, 688–89 (A.F.C.M.R.1991), the appellant:

> has not produced any evidence that would put the issue into controversy.... In the future, when the factual basis that could support an issue is a matter within an appellant's knowledge, we will expect appellate counsel to investigate the matter before assigning the error. *See United States v. Hilow,* 32 M.J. 439, 445 n. 2 (C.M.A.1991) (Cox, J., dissenting).

Having been present, trial defense counsel obviously would have been aware if any substantive informal discussion took place regarding the Chapter 4. This Court has previously noted that post-trial claims arising from off-the-record communications will find little relief on review if not made part of the record. "If trial defense counsel believe that an off-the-record communication, in which he has participated, or of which he has knowledge, has adversely affected the substantial rights of the accused, it is incumbent upon him to place the matter on the record at the earliest opportunity for an Article 39a Session. Failure to do so will ordinarily result in waiver of any claimed error pertaining to the off-the-record communication." *United States v. Svan,* 10 M.J. 784, 787 n. * (A.F.C.M.R. 1981). *See* R.C.M. 802; *United States v. Thomas,* 32 M.J. 1024 (A.F.C.M.R.1991); *United States v. Sneed,* 32 M.J. 537 (A.F.C.M.R.1990).

In the instant case, the trial defense counsel raised the issue of the Chapter 4 request on the record and requested a ruling from the military judge. The military judge ruled on the record that the trial would proceed. We also note that the appellant has not alleged that the government failed to follow the regulatory procedures for processing a request for discharge in lieu of trial by court-martial. *See United States v. Shoup,* 31 M.J. 819 (A.F.C.M.R.1990).

After carefully considering the entire record, we find the record meets the requirement that it be substantially verbatim. *United States v. Lashley,* 14 M.J. 7 (C.M.A. 1982); *United States v. McCullah,* 11 M.J. 234 (C.M.A.1981).

## IV

■ Another issue not raised on appeal requires action on our part regarding the sentence. We find the convening authority erred when he approved a sentence of total forfeitures when no confinement was adjudged. *United States v. Warner,* 25 M.J. 64 (C.M.A.1987); *United States v. Deisher,* 32 M.J. 579 (A.F.C.M.R.1990), *pet. denied,* 32 M.J. 484 (C.M.A.1991); *United States v. Santiago,* 27 M.J. 688 (A.C.M.R.1988), *pet. denied,* 28 M.J. 233 (C.M.A.1989). *See* Discussion, R.C.M. 1107(d)(2); Air Force Regulation 111–1, *Military Justice Guide,* para. 15–15b(3) Change 2 (12 July 1989).

We will now correct the sentencing error by reducing that portion of the sentence pertaining to total forfeitures to forfeitures of $482.00 per month until the bad-conduct discharge is executed. The approved findings of guilty and the sentence, as modified, are correct in law and fact and are

AFFIRMED.

Senior Judge O'HAIR and Judge RIVES concur.