UNITED STATES, Appellee,

v.

James COKELEY, Jr., Staff Sergeant
U.S. Army, Appellant.

No. 51,756.
CM 445271.

U.S. Court of Military Appeals.

June 23, 1986.

For Appellant: *Captain David W. Sorensen* (argued); *Prince A. Brumfield, Esq., Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Captain Craig E. Teller* (on brief); *Colonel William G. Eckhardt* and *Colonel Brooks B. La Grua.*

For Appellee: *Captain Patrick A. Hewitt,* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Captain Dean C. Berry* (on brief); *Lieutenant Colonel Gary F. Roberson, Lieutenant Colonel Joseph A. Rehyansky, Captain John J. Park, Jr.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial at Fort Jackson, South Carolina, during November and December, 1983.

Contrary to his pleas, he was convicted by a panel of officer and enlisted members of attempted rape, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880. His sentence to confinement for 4 years, reduction to E–1, and a dishonorable discharge was approved by the convening authority. The Court of Military Review affirmed these results in a short-form opinion on January 18, 1985.

The issue granted is whether the Government established unavailability of the chief prosecution witness so as to permit the use of her videotaped deposition over defense objection. We conclude that the military judge erred in admitting the deposition under the circumstances of this case and reverse.

## I

The attempted rape was alleged to have occurred on July 26, 1983. Anticipating that the victim, Mrs. Kathleen Grace, would be leaving the area due to her husband's imminent discharge from the Army, trial counsel made a request to the general court-martial convening authority that she be deposed. The request was granted, and on August 5 a videotaped deposition took place. Appellant waived his right to be present, but his detailed defense counsel was present and cross-examined the witness. After the deposition, Mrs. Grace departed the area, leaving her grandfather's address and phone number in Oregon as a point of contact.

At the first session of trial on November 17, defense counsel objected to the Government's proposed introduction of the deposition in lieu of the in-court testimony of the witness. Defense counsel expressed a need to cross-examine Mrs. Grace further in light of information that had developed at the Article 32, UCMJ, 10 U.S.C. § 832, investigation, which was held after the deposition. Although Mrs. Grace had returned a subpoena in early October with a note stating that she was unable to travel due to pregnancy, defense counsel posited that

the situation had changed.[1] He proffered that a telephone call to her doctor's office revealed that Mrs. Grace had already given birth and that she should be able to travel shortly. Therefore, the defense requested that the court-martial be continued so the witness could be present to testify in court.

Opposing a continuance, trial counsel questioned the necessity for the personal presence of the witness, contending that the defense had made no contact with Mrs. Grace since the deposition. Thus, he argued, it was mere defense speculation that she had anything meaningful to add to her deposition testimony. Trial counsel also indicated that the witness was being uncooperative. He stated that he had tried to speak with her numerous times, leaving messages with her grandfather asking her to call collect, but she had not returned his calls.

Whereupon, the military judge expressed skepticism concerning the desirability of delaying trial to secure the presence of the witness, stating that he had difficulty seeing "any real justification for what's going to amount [to] purely speculative delay and a fishing expedition to get her down here, if she opts to come." He asked defense counsel to "make an offer of proof" explaining what the witness could add to her deposition testimony "if we go to all this trouble and expense." After much discussion, the military judge granted a continuance, stating:

I have serious reservations as to whether that young lady is ever going to appear here, I'll believe it when I see her out there, but everything points to me as if she's just not very interested in this proceeding for whatever the reasons may be, and it remains to be seen. I've granted a continuance to the defense with instructions to exhaust everything that we can think of to do to re-subpoena her of course, to have it served if possible by a local law enforcement official there and have it executed and returned by him as

1. Mrs. Grace was pregnant at the time of the offense. In fact, she stated that her assailant terminated the attack upon her and fled when she told him that she was pregnant.

versus her. If she does that and then doesn't appear, well we have pretty conclusive evidence. Attempt to make contact with her ... and try to elicit what it is she's going to say that might make a difference of whether we want her or not. But, be that as it may, we've set the dates of the 15th and the 16th of December, Thursday and Friday here in this courtroom, for further proceedings whether or not she's present. If she refuses to recognize the subpoena, I'm prepared to direct at that time, that the prior deposition be used in lieu of her testimony, and that the defense will simply have to develop their case however they can.

At the next session of trial on December 12, trial counsel represented that he had spoken with Mrs. Grace and her doctors on December 2 and had been informed that: Mrs. Grace was "medically unavailable to travel at this time." She was recovering from an infection and "emergency Caesarean section" performed on November 1. In addition, her baby had "two heart murmurs, one of which" was "potentially serious." Her doctor estimated that it would "be at least two to three weeks before he" could determine when she would be able to "travel and that he would also have to consult with ... the pediatrician to determine what was in the best interest of the baby."

The defense did not refute the information provided by trial counsel. Instead, the defense requested another continuance so Mrs. Grace could be present, reiterating its position that the witness' testimony was crucial and that appellant should be provided confrontation at trial. Denying the request for a continuance, the military judge ruled that Mrs. Grace was unavailable to testify and admitted the deposition into evidence. The videotaped deposition was then played to the members during the prosecution's case-in-chief.

## II

Article 49(a), UCMJ, 10 U.S.C. § 849(a), provides that at any time after charges have been preferred, any party may request that a deposition be taken. The taking of a deposition is appropriate "to preserve the testimony of" a prospective witness who may be unavailable to appear at the Article 32 investigation or at trial. Para. 117a, Manual for Courts-Martial, United States, 1969 (Revised edition); see R.C.M. 702(a), Manual for Courts-Martial, United States, 1984. Depositions can be a useful tool in the search for truth in a criminal case by preserving evidence that would otherwise be lost to the finders of fact.

Appellant has never disputed the appropriateness of the taking of the deposition in this case. When it appeared that a necessary government witness was pregnant and planning to relocate to an unknown address 3,000 miles away, trial counsel alertly sought to preserve and perpetuate Mrs. Grace's testimony. Appellant received notice of the time and place for taking the deposition, was assigned counsel to represent him, and was provided a meaningful opportunity to cross-examine the witness. After the deposition, trial counsel obtained an address and telephone number of a close relative as a means of contacting Mrs. Grace, which was apparently all that he could reasonably do because he had no means of preventing her from leaving the area. Cf. United States v. Mann, 590 F.2d 361 (1st Cir.1978) (Government must use reasonable means to prevent present witness from becoming absent).

## III

Although the taking of the deposition was authorized, the use of the deposition at trial in place of the personal appearance of the deponent presents another problem.[2]

**2.** Article 49, Uniform Code of Military Justice, 10 U.S.C. § 849, provides in pertinent part:

   (d) A duly authenticated deposition taken upon reasonable notice to the other parties, so

far as otherwise admissible under the rules of evidence, may be read in evidence ... if it appears—

The confrontation clause[3] of the sixth amendment requires the Government to demonstrate that the declarant is unavailable when it seeks to admit a deposition against an accused at a criminal trial in the place of live testimony. *See United States v. Inadi,* — U.S. —, —, 106 S.Ct. 1121, 1126, 89 L.Ed. 2d 390 (1986); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Crockett,* 21 M.J. 423 (C.M.A.1986). *Cf. United States v. Courts,* 9 M.J. 285 (C.M.A.1980) (military judge has discretion to determine whether alternative to live testimony acceptable on sentencing). Mil.R.Evid. 804(b)(1), 1969 Manual, *supra,* also imposes an unavailability requirement before permitting the admission of a deposition or former testimony. The confrontation clause and the hearsay rules generally protect similar concerns, but "the overlap is not complete." *United States v. Inadi, supra* 106 S.Ct. at 1126 n. 5.

■ The general test of unavailability is whether the witness is not present in court in spite of good-faith efforts by the Government to locate and present the witness.

(1) that the witness resides or is beyond the State, Territory, Commonwealth, or District of Columbia in which the court ... is ordered to sit, or beyond 100 miles from the place of trial or hearing;

(2) that the witness by reason of death, age, sickness, bodily infirmity, imprisonment, military necessity, nonamenability to process, or other reasonable cause, is unable or refuses to appear and testify in person at the place of trial or hearing; or

(3) that the present whereabouts of the witness is unknown.

Article 49(d)(1) cannot be applied literally. *See Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *United States v. Mohr,* 21 U.S.C.M.A. 360, 45 C.M.R. 134 (1972). The language of Article 49(d) is similar to that contained in Fed.R.Civ.P. 32(a)(3), but it should be noted that there are substantial differences between civil and criminal cases. For example, in the federal system, service of a civil subpoena is limited to a distance of 100 miles from the place of hearing, while a criminal subpoena may be served anywhere in the country. *See* Fed.R. Civ.P. 45(e)(1); Fed.R.Crim.P. 17(e); 28 U.S.C 1783. When a deposition is to be used *against* an accused, constitutional requirements of the confrontation clause are applicable. *See* 5 Wigmore, *Evidence* § 1398 (Chadbourn rev. 1974).

*Ohio v. Roberts, supra* 448 U.S. at 74, 100 S.Ct. at 2543. Mil.R.Evid. 804(a)(4) defines unavailability to include situations where the declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." This definition of unavailability is taken from the federal rule without change. Unlike death, the situation here may have been merely temporary. Although the "then existing" language of Mil.R.Evid. 804(a)(4) would seem to permit a finding of unavailability merely if the witness happens to be ill on the day of trial, some delay to permit a witness to recover from what appears to be a temporary disability is required under the confrontation clause. *See Ohio v.Roberts, supra* ; *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). *See also* 11 *Moore's Federal Practice* § 804.03[4] (2d ed. 1985); *McCormick on Evidence* § 253(4) at 755, 758 (E. Cleary, 3d ed. 1984); S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 650 (3d ed. 1982); 4 J. Weinstein & M.

Under Fed.R.Crim.P. 15, the use at trial of a deposition is restricted as follows:

(e) *Use.* At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence, or the witness gives testimony at the trial or hearing inconsistent with his deposition. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness ....

3. The sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Some commentators have stated that the confrontation right originated in the common law in response to prosecutorial abuses in the trial of Sir Walter Raleigh, who was tried by affidavit and convicted of treason. *See* Graham, *Indicia of Reliability and Face to Face Confrontation* : *Emerging Issues in Child Sexual Abuse Prosecutions,* 40 U. Miami L.Rev. 19, 63 (1985); F. Heller, *The Sixth Amendment to the Constitution of the United States* 104 (1951).

Berger, *Evidence* § 804(a)[01] at 804–39 (1979).

■■ Unfortunately, there is no bright-line rule which will fit every situation. Unavailability is clear when the witness is not expected to improve. *See United States v. Keithan,* 751 F.2d 9 (1st Cir. 1984). On the other hand, delay of the trial is not necessary in every case where a witness is ill but may recover someday. *See Howard v. Sigler,* 454 F.2d 115 (8th Cir.), *cert. denied,* 409 U.S. 854, 93 S.Ct. 188, 34 L.Ed.2d 98 (1972). The military judge must carefully weigh all facts and circumstances of the case, keeping in mind the preference for live testimony.[4] Factors to be considered include the importance of the testimony, the amount of delay necessary to obtain the in-court testimony, the trustworthiness of the alternative to live testimony, the nature and extent of earlier cross-examination, the prompt administration of justice, and any special circumstances militating for or against delay.

■ The military judge's determination of unavailability is reviewable for abuse of discretion. *United States v. Faison,* 679 F.2d 292 (3d Cir.1982). *See United States v. Thomas,* 22 M.J. 57 (C.M.A.1986). Considering the substantial discretion reposed in the military judge, the evidence in this record may well have supported the decision to deny another continuance to *perhaps* enable the witness to recover sufficiently to appear in court. This case does not present the usual situation, however, as it appears that the military judge's exercise of discretion was based to some extent on a misapprehension of the applicable law. First, his remarks indicate that he erroneously shifted the burden to the defense to

demonstrate that the witness was available to testify in court and that her presence was necessary. It is the Government, of course, who has the burden of demonstrating that a witness is unavailable when it seeks to introduce former testimony or a deposition. Second, the military judge may have been laboring under the misconception that the witness was unavailable, at least in part, due to her aversion to appearing. Yet, a military judge is not powerless to compel the attendance of a reluctant civilian witness. Even if a witness will not voluntarily attend pursuant to the issuance of a subpoena, a warrant of attachment can be served. *United States v. Hinton,* 21 M.J. 267 (C.M.A.1986). *See* Art. 47, UCMJ, 10 U.S.C. § 847.

The military judge did not articulate that he weighed the relevant considerations. Furthermore, his remarks at the first Article 39(a), UCMJ, 10 U.S.C. § 839(a), session reflect that he had already made the decision to proceed with trial in mid-December regardless of the availability of the witness. The testimony of the witness was not merely cumulative or of a minor nature but was absolutely necessary to prove that a crime had been committed and to describe the assailant. Although at the deposition the witness was subject to cross-examination under oath, the deposition was taken at an early stage well before the investigation of the crime was complete. Any delay necessitated by granting the defense request would have been attributable to the defense for speedy-trial purposes.

■ In view of all the circumstances, we hold that it was an abuse of discretion for the military judge to admit the deposition over defense objection without granting a

---

4. "The relative scarcity of decisions passing upon the degree of permanency required supports the conclusion that most of the cases are handled by continuance." *McCormick on Evidence,* § 253 at 755 (E. Cleary, 3d ed. 1984). *Cf. United States v. Faison,* 679 F.2d 292 (3d Cir. 1982) (abuse of discretion to deny defense-requested postponement for reasonable period to afford witness time to recover from possible temporary disability of coronary bypass sur-

gery); *United States v. Bell,* 500 F.2d 1287 (2d Cir.1974) (not error to admit former testimony where doctor's statement indicated witness would not be able to testify for at least two and one-half months); *Peterson v. United States,* 344 F.2d 419 (5th Cir.1965) ("Government could not use former testimony when a continuance of several months would have permitted a witness suffering a difficult pregnancy to testify in person after the birth"—500 F.2d at 1290).

further continuance to obtain a medical update so it could be determined whether the witness would be available to testify in court within a reasonable period. This constitutes prejudicial error and requires further proceedings.

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.