UNITED STATES, Appellee

v.

John W. SUTTON, Jr., Staff Sergeant
U.S. Air Force, Appellant.

No. 94–0400.
CMR No. 29318.

U.S. Court of Appeals for
the Armed Forces.

Argued May 17, 1995.

Decided Sept. 13, 1995.

For Appellant: *Captain Todi S. Carnes*
(argued); *Colonel Jay L. Cohen* (on brief);
*Captain Gilbert J. Andia, Jr.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Thomas E. Schlegel*
and *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

1. Contrary to his pleas, appellant was convicted of the following:

(a) violating a lawful general regulation by wrongfully exchanging and possessing without authority U.S. currency between October 9, 1988, and February 5, 1989;

(b) violating a general regulation by wrongfully using the U.S. military Postal System to receive packages for Mr. Glenn Bergendahl between October 9, 1988, and February 5, 1989;

(c) three specifications of conspiracy with three separate servicemembers between October 9, 1988, and February 5, 1989, to wrongfully exchange U.S. currency at other than an authorized currency exchange point; and a fourth specification of conspiracy with a fourth member during the same time to wrongfully possess U.S. currency;

(d) receiving a thing of value for delivering official matter through the Armed Forces Postal (APO) system to Mr. Bergendahl between March 23, 1987, and July 9, 1987;

(e) receiving $25.00 for delivering official matter through the APO system to Mr.

Bergendahl between October 9, 1988, and February 5, 1989;

(f) soliciting Staff Sergeant Steele to receive packages for Mr. Bergendahl through the APO mailing system and using a government vehicle to deliver such packages to Mr. Bergendahl.

2. These offenses are in violation of Articles 92, 81, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 881, and 934, respectively. The trial was at Nellis AFB, Nevada, on March 19–22, 1991. The convening authority approved the sentence of a dishonorable discharge, 3 years' confinement, total forfeitures, reduction to the lowest enlisted grade, and a fine of $84,742 (or to be confined for an additional 5 years until such fine is paid). The Court of Military Review * affirmed the findings and sentence in a fifteen-page unpublished opinion, 1993 WL 541345. We granted appellant's petition on the following issues:

### I (modified)

WHETHER THE MILITARY JUDGE ERRED BY RULING THAT MR. BERGENDAHL WAS UNAVAILABLE WITHOUT REQUIRING THE GOVERNMENT TO SHOW AN ATTEMPT TO OBTAIN MR. BERGENDAHL'S TESTIMONY BY DEPOSITION.

### II

WHETHER STATEMENTS, WHICH ACKNOWLEDGE THE DECLARANT'S OWN CRIMINAL LIABILITY BUT WHICH MADE APPELLANT SEEM MORE CULPABLE, MADE WHILE THE DECLARANT WAS BEYOND THE REACH OF THE HONDURAN GOVERNMENT QUALIFY AS STATEMENTS AGAINST INTEREST.

### III

WHETHER ADMISSION OF STATEMENTS OF MR. BERGENDAHL VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION SINCE THEY DID NOT MEET THE REQUIREMENTS OF *IDAHO V. WRIGHT.*

### FACTS

3. Appellant was on temporary duty in Honduras and discovered a better exchange rate for his dollars at unauthorized exchange points on the local economy. He developed a scheme whereby he converted his dollars into local currency, then took the local currency to the base and turned it into U.S. dollar money orders. He also became involved in a second scam in which he allowed a commercial vendor, Mr. Bergendahl, to receive packages through the Armed Forces Postal system. Mr. Bergendahl was a Norwegian businessman operating in Honduras. Mr. Bergendahl's statements concerning appellant's various schemes were admitted into evidence at trial under Mil.R.Evid. 804(b)(3), Manual for Courts–Martial, United States, 1984, following a determination that he was unavailable due to Honduran travel restrictions because he was still appealing his conviction of criminal charges in Honduras. Appellant now argues that Mil.R.Evid. 804(b)(3), like its Federal counterpart, should require that there be an attempted deposition prior to declaring a witness unavailable in the United States. Final Brief at 13. The record indicates that the Government did attempt to talk to Mr. Bergendahl about a deposition but he refused to make a statement in Honduras while his appeal of his conviction of the charges against him was pending. There was no evidence in the record that the United States would find it impractical to return the court-martial to Honduras, the site of the crime as well as of the location of Bergendahl. RCM 906(b)(11), Manual, *supra*, authorizes a change of venue, but no such motion was made.

### Discussion

4. For Mr. Bergendahl's statements to be admissible under Mil.R.Evid. 804(b)(3), the declarant must be (1) unavailable, and (2) the statement must be against the declarant's penal interest, that is, such "that a reasonable person ... would not have made the

---

* *See* 41 MJ 213, 229 n. * (1994).

statement unless" he or she "believed it to be true."

5. As to a declaration against penal interest, *Williamson v. United States,* — U.S. —, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), has limited Fed.R.Evid. 804(b)(3) to those portions of a narrative that actually inculpate the declarant. Statements that are not self-inculpatory are not covered.

6. Nevertheless, we need not resolve admissibility of Mr. Bergendahl's statements. Instead, we hold that any error regarding admissibility of Mr. Bergendahl's statement as to the offenses was harmless. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Art. 59(a), UCMJ, 10 USC § 859(a). All four soldiers who conspired with appellant to commit the offenses testified at trial as to their conduct, appellant's conduct, and statements by appellant concerning the conduct. This testimony, together with other testimony and documentary evidence (pros. ex. 9, 11, 18), compellingly establish appellant's guilt beyond a reasonable doubt as to each of those offenses.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

WISS, Judge (concurring):

7. I conclude that the military judge erred by admitting the out-of-court statements of Bergendahl into evidence: First, the Government had not pursued "every reasonable means" (¶ 11) to obtain his testimony—specifically, by way of deposition; second, in any event, his statements, in the circumstances under which they were made, were not against his penal interest.

I

8. Mil.R.Evid. 804(a)(5), Manual for Courts-Martial, United States, 1984, stipulates that, before a witness is "unavailable" for purposes of admission of certain hearsay statements, including a statement against interest under Mil.R.Evid. 804(b)(3), the proponent of the declarant's statement must show that it "has been unable to procure ... the declarant's attendance or testimony by process or other reasonable means...." The legislative history of the identical federal rule makes clear the drafters' intent that this includes at least an effort to depose the declarant. *See* J. Weinstein & M. Berger, 4 *Weinstein's Evidence,* Initial Congressional Changes at 804–8 to 804–10 and para. 804(a)[01] at 804–57 (1995).

9. The Drafters' Analysis of Mil.R.Evid. 804(a)(5) reflects that the rule is "taken from the Federal Rule without change," except as to a different subsection from the one relevant here. Manual, *supra* at A22–51 (Change 2). In the absence of any indication that the drafters' intent was, nonetheless, for a different meaning and application, the same requirement should be ascribed to the military rule as to the federal rule. *See United States v. Powell,* 22 MJ 141, 143 (CMA 1986); S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* (hereafter Saltzburg) 843 (3d ed. 1991).

10. Trial counsel's written brief in support of admissibility of Bergendahl's out-of-court statements refers to the efforts to obtain his live appearance (he was under travel restrictions in Honduras pending completion of his appeal of his conviction there) but made no mention of any effort to obtain his testimony by deposition. Appellate Exhibit II at 1. Responding to a defense objection in this connection and the military judge's inquiry as to whether any steps had been taken to obtain a deposition, trial counsel represented that Bergendahl had orally told counsel "that he would not be willing to make any statements within" Honduras because it might "affect his case" there. The military judge's ruling that the witness was unavailable under Mil.R.Evid. 804(a) addressed the Government's efforts to secure Bergendahl's attendance at trial but did not mention the adequacy of its effort to secure Bergendahl's testimony via deposition.

11. This Court has stated "that a witness is not 'unavailable'" for hearsay-evidence purposes unless the proponent "has exhausted every reasonable means to secure" the witness' testimony. *United States v. Burns,* 27 MJ 92, 97 (1988). Usually, a mere refusal

of a witness to cooperate fails this standard. *Cf. United States v. Ortiz,* 35 MJ 391 (CMA 1992); *United States v. Ferdinand,* 29 MJ 164 (CMA 1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); *United States v. Cokeley,* 22 MJ 225 (CMA 1986).

12. I recognize that a judicial order to Bergendahl to submit to a deposition would not have been enforceable in Honduras, *cf. United States v. Hampton,* 33 MJ 21 (CMA 1991). While the consequences of such an order are uncertain, I cannot say on this bare record that a deposition order would have been futile. *Cf. United States v. Rousseau,* 25 MJ 188 (CMA 1987)(summary disposition) (Everett, C.J., concurred in the result, noting that a judicial "order might have carried some weight with the witness merely by reason of the judge's position"). Moreover, there is no basis in this record for knowing what effect, if any, a judicial order would have had on the willingness of Honduran officials to cooperate in some manner so that Bergendahl's deposition could have been secured. The effort simply never was made.

13. Accordingly, I believe that, on this record that the court below found "barely enough," unpub. op. at 7, the military judge abused his discretion in finding Bergendahl "unavailable" for purposes of Mil.R.Evid. 804(a) without first issuing an order to Bergendahl to submit to a deposition.

II

14. Of course, even if Bergendahl was unavailable, admission of his out-of-court statements depends upon their justifiably being characterized as against his interest. *See* Mil.R.Evid. 804(b)(3). These statements fail this test.

15. To qualify under this hearsay exception, the relevant statement, "at the time of its making," must have "so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true." Mil.R.Evid. 804(b)(3). Since these conditions are intended to guarantee trustworthiness of the statement, "it is important to determine whether a person would have thought the statement was against interest *when made....*" Saltzburg, *supra* at 847 (emphasis added). Unfortunately, I believe that the conclusion is ineluctable that Bergendahl, in fact, believed that he had everything to gain by making these statements in cooperation with United States investigative agents.

16. Bergendahl was in Norway when an employee in Honduras informed him of business problems and inquiries by customs officials. Immediately, he returned to Honduras and, upon advice of counsel, began close cooperation with Honduran officials. Pros.Ex. 2 at 6. His statement of August 15, 1989, indicates that he cooperated with those officials because he repeatedly was told that, in exchange for that cooperation, his business would not be disrupted and "no criminal action" would be taken against him. Pros.Ex. 2 at 7.

17. Later, press interest in this matter increased, and Bergendahl was told that Honduran officials were looking for him and were prepared to apprehend him. In response, he fled to Nicaragua, from whence he communicated to Honduran officials that he would not return without a written guarantee of no prosecution. Pros.Ex. 2 at 7–8.

18. In this context, he phoned an agent of the United States Government from Nicaragua to offer his cooperation in an investigation by the United States. He agreed to cooperate, stating that he had "lost my trust in the word of" local Honduran officials. Bergendahl then traveled to Howard Air Force Base in Panama, pros. ex. 2 at 8, where he made the two sworn statements in issue at appellant's trial. Those statements not only implicated Bergendahl but, as well, implicated appellant and others and sought to minimize and rationalize Bergendahl's role. *But see Williamson v. United States,* — U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)(only statements that are truly inculpatory are covered by Fed.R.Evid. 804(b)(3)).

19. In sum, then, Bergendahl made the statements while in Panama and not subject

to Honduran jurisdiction. Further, he did so at a time in which he had affirmatively conditioned his return to Honduras on a guarantee of non-prosecution and while he affirmatively was pursuing such a promise. Thus, his statements to U.S. agents may have been motivated by a wish to curry favor in this regard, or they simply may have been the product of a belief that, in any event, they would not be used against him in any Honduran prosecution. Either way, they fail muster as trustworthy under Mil.R.Evid. 804(b)(3).

### III

20. Normally, admission of such evidence, in violation of the rules of evidence and, likely, the Sixth Amendment right of confrontation, would compel reversal. Indeed, I confess that my decision to concur in the majority's conclusion of no prejudice is with some reservation. In the end, however, I believe the majority correctly decides that the other evidence against appellant is so compelling that, beyond a reasonable doubt, Bergendahl's statements did not prejudice the members' findings.